1   Gregory D. Helmer, P.C. (SBN 150184)
    (Ghelmer@Helmerfriedman.com)
2   Andrew H. Friedman, P.C. (SBN 153166)
    (Afriedman@Helmerfriedman.com)
3   HELMER FRIEDMAN LLP
    723 Ocean Front Walk
4   Venice, California 90291
    Telephone: 310-396-7714
5   Facsimile: 310-396-9215

6   Michael D. Seplow (SBN 150183)
    Michael S. Morrison (SBN 205320)
7   (SCHONBRUN DESIMONE SEPLOW
    HARRIS & HOFFMAN LLP
8   723 Ocean Front Walk
    Venice, CA 90291
9   Telephone: (310) 396-0731
    Fax: (310) 399-7040
10  Attorneys for Plaintiffs

*Issued summons on First amended Complaint*

FILED

2001 APR 24 PM 12:33
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13  LOIS GRADY, KAYE STEINSAPIR,          )   Case No. CV 07-02253-DDP (PLAx)
    BARBARA GONZALES, FRANK               )   FIRST AMENDED COMPLAINT
    BODEMAN, and CRAIG ANDERSON           )   FOR DAMAGES AND
14  individually and on behalf of all others  )   EQUITABLE RELIEF:
    similarly situated                     )
15                                         )   1.   STRICT PRODUCTS
                   Plaintiffs,            )        LIABILITY
16                                         )
                                           )   2.   NEGLIGENCE
17  vs.                                    )
                                           )   3.   BREACH OF
18                                         )        WARRANTIES
    MENU FOODS INCOME FUND,                )
19  MENU FOODS, INC., MENU FOODS          )   4.   UNFAIR BUSINESS
    LIMITED, MENU FOODS OPERATING         )        PRACTICES(CALIFORNIA
20  LIMITED PARTNERSHIP, MENU             )        BUSINESS &
    FOODS MIDWEST CORP., CHEM             )        PROFESSIONS CODE §§
21  NUTRA INC., PETCO ANIMAL              )        17200 ET SEQ.)
    SUPPLIES, INC., NUTRO PRODUCTS,       )
22  INC. and DOES 1 through 10, inclusive,)   5.   FALSE ADVERTISING
    Defendants.                            )        (CALIFORNIA BUSINESS
23                                         )        &PROFESSIONS CODE §§
    _____       )        17500 ET SEQ.)
24                                         )
                                           )   6.   CONSUMER LEGAL
25                                         )        REMEDIES ACT
                                           )        (CALIFORNIA CIVIL
26                                                  CODE SECTION 1770 ET
                                                    SEQ.)
27
                                               **DEMAND FOR JURY TRIAL**
28

                    FIRST AMENDED COMPLAINT

6

1
2  Plaintiffs Lois Grady, Kaye Steinsapir, Barbara Gonzales, Frank Bodeman, Craig
3  Anderson,  individually on behalf of themselves, and on behalf all others similarly
4  situated, and the general public, on information and belief, make the following
5  allegations to support this First Amended Complaint:
6
7                          **INTRODUCTION**
8          1.  Plaintiffs file this class action on behalf of themselves and similarly
9  situated individuals whose pets died and/or became seriously ill after ingesting
10  various brands of tainted dog and cat food manufactured,  distributed and/or sold
11  by Menu Foods and its related companies throughout the State of California and
12  the United States.  The food, including popular brands such as Iams, Eukanuba,
13  Nutro Natural Choice, Nutro Ultra, Special Kitty, Loving Meals, Winn Dixie,
14  Science Diet, Ol' Roy and other labels that were marketed to consumers as healthy
15  and nutritious food for their pets, was found to contain a toxic compound, which
16  has been variably identified by the defendants as either aminopterin (a toxin used
17  to kill rats and other rodents) or melamine (a chemical substance used in plastics
18  and fertilizer).
19
20         2. Menu Foods knew that its food was causing harm to pets for over three
21  weeks before it finally issued what is purported to be one of the largest, if not the
22  largest, recalls of products in the pet food industry's history.  During the weeks
23  and months following the recall, as additional pets were getting sick or dying,
24  Menu Foods was forced to concede that its recall was too limited.  Indeed, it was
25  forced to expand its recall on several occasions.  In the meantime, countless pets
26  have died, experienced kidney failure and/or suffered other serious adverse health
27  consequences as a result of eating the contaminated food.
28

1

## NATURE OF THE ACTION

2   3. Plaintiffs bring this action on behalf of themselves and all other pet

3   owners residing in the United States who purchased any of the tainted pet food

4   and/or whose dogs or cats became sick or died as a result of ingesting the tainted

5   pet food.

6   ## JURISDICTION AND VENUE

7   4. This action which was originally filed in Superior Court for the County

8   of Los Angeles on March 27, 2007 was removed to this court by the Menu Foods

9   Defendants on April 5, 2007 pursuant to 28 U.S.C. §§ 1441 and 1446. The

10   jurisdiction of this Court was invoked under 28 U.S.C. § 1332(d)(2) as a class

11   action involving citizens of different states in which the amount in controversy

12   exceeds $5,000.000.00.

13

14   5. This Court has personal jurisdiction over the defendants because they

15   are citizens of and/or doing business in the State of California.

16

17   6. Venue is proper in this judicial district by virtue of 28 U.S.C. § 1391

18   because, among other things, a substantial part of the acts or omissions complained

19   of occurred in this judicial district and/or because one or more of the defendants

20   reside in this judicial district.

21

22   ## PLAINTIFFS

23   7. Plaintiff Lois Grady ("Ms. Grady") is a resident of the County of Fresno

24   and a citizen of the State of California. Ms. Grady is the owner of a cat named

25   Riley, who became ill upon ingesting tainted pet food manufactured and

26   distributed by Defendants, including, without limitation, Special Kitty pet food.

27   In or about March, 2007, Plaintiff Lois Grady fed Special Kitty cat food, one of

28

1    the brands of tainted Pet Food, to her cat, Riley. Ms. Grady had purchased the
2    Special Kitty food at a Wal-Mart store in Fresno, California. Shortly thereafter,
3    Riley refused to eat his food, became lethargic and suffered from bouts of
4    vomiting. Riley also lost weight and appeared seriously ill. Ms. Grady became
5    extremely concerned and took Riley to the veterinarian. After performing blood
6    and urine tests, the veterinarian diagnosed Riley as suffering from kidney failure.
7    Riley required extensive veterinarian treatment and will require a special diet for
8    the remainder of his life. Prior to that time, Riley had been in excellent health.
9    Ms. Grady is informed and believes that her cat's illness was directly caused by
10    the ingestion of Special Kitty, which is one of the numerous tainted pet food
11    products manufactured and distributed by Defendant MENU FOODS. As a result,
12    Ms. Grady has sustained compensatory damages, including, without limitation,
13    veterinary bills and related expenses. Ms. Grady brings this action on behalf of
14    herself and all others similarly situated

15

16       8. Kaye Steinsapir ("Ms. Steinsapir") is a resident of the County of Los
17    Angeles and a citizen of the State of California. Ms. Steinsapir is the owner of a
18    cat named Lila, who became ill upon ingesting tainted pet food manufactured and
19    distributed by Defendants, including, without limitation, Nutro Natural Choice cat
20    food. Ms. Steinsapir purchased the contaminated at a Petco store in Los Angeles
21    County, California. Plaintiff Kaye Steinsapir fed her four-year-old cat, Lila, Nutro
22    Natural Choice cat food – one of the brands of tainted Pet Food – since Lila was a
23    kitten. She continued to feed Lila Nutro Natural choice through and including
24    March, 2007. Ms. Steinsapir believed she was feeding Lila one of the healthiest,
25    nutritious cat foods available on the market. Prior to March, 2007, Lila was a
26    healthy, vibrant cat without any medical conditions. However, in or about March,
27    2007, Lila became seriously ill after Ms. Steinsapir fed her Nutro Natural Choice

28

1   foil pouches. Lila began vomiting repeatedly and drinking an excessive amount of
2   water. Although Lila had always had a very healthy appetite prior to March, 2007,
3   she stopped eating her wet food. Ms. Steinsapir brought Lila to her veterinarian,
4   who diagnosed Lila with acute kidney failure.   Lila was subsequently hospitalized
5   and required extensive veterinary treatment, including, but not limited to,
6   intravenous fluids and a urinary catheter that required her to be placed under
7   anesthesia. Prior to ingesting the tainted Pet Food, Lila had been playful, full of
8   energy and never suffered any illness whatsoever. Ms. Steinsapir is informed and
9   believes and thereon alleges that Lila will require a special diet for the rest of her
10  life and will also require veterinary care for the foreseeable future. Ms. Steinsapir
11  is informed and believes and thereon alleges that her cat's illness was directly
12  caused by the ingestion of Nutro Natural Choice, which is one of the numerous
13  tainted pet food products manufactured by Defendant MENU FOODS. As a
14  result, Ms. Steinsapir  has sustained compensatory damages, including, without
15  limitation, veterinary bills and related expenses. Ms. Steinsapir  brings this action
16  on behalf of herself and all others similarly situated.

17

18      9. Barbara Gonzales is a resident of Bakersfield, California and a citizen of
19  the State of California. Ms. Gonzales owned a cat named Meme who became ill
20  upon ingesting tainted pet food manufactured and distributed by Defendants,
21  including, without limitation, Special Kitty Select cat food. Ms. Gonzales had fed
22  her cat Special Kitty Select Gourmet pet food which was purchased at Walmart in
23  Bakersfield, California. In early March 2007, Meme became ill and as result Ms.
24  Gonzales took Meme to the veterinarian on several occasions. However, despite
25  being treated by the veterinarian,  Meme became sicker and eventually died on
26  March 17, 2007. Ms. Gonzales is informed and believes and thereon alleges that
27  her cat's illness and death  was directly caused by the ingestion of Special Kitty

28

1  Select cat food, which is one of the numerous tainted pet food products

2  manufactured by Defendant MENU FOODS. As a result, Ms.

3  Gonzales has sustained compensatory damages, including, without limitation,

4  veterinary bills and related expenses. Ms. Gonzales brings this action on behalf

5  of herself and all others similarly situated.

6

7      10. Plaintiff Frank Bodeman is a resident of Alhambra, California and a

8  citizen of the State of California. Mr. Bodeman owned a cat named Princess who

9  became ill upon ingesting tainted pet food manufactured and distributed by

10 Defendants, including, without limitation, Special Kitty Select cat food and Iams.

11 Mr. Bodeman fed his cat Special Kitty Select Gourmet pet food which was

12 purchased at Walmart in Rosemead, California. In or about March 2007, Princess

13 became ill and as a result Mr. Bodeman took her to the veterinarian on several

14 occasions. However, Princesses became sicker and eventually died on or about

15 March 22, 2007. Mr. Bodeman is informed and believes and thereon alleges that

16 his cat's illness, which included kidney failure, and eventual death was directly

17 caused by the ingestion of Special Kitty Select cat food, and/or one of the

18 numerous tainted pet food products manufactured by Defendant MENU FOODS.

19 As a result, Mr. Bodeman has sustained compensatory damages, including,

20 without limitation, veterinary bills and related expenses.. Mr. Bodeman brings

21 this action on behalf of himself and all others similarly situated.

22

23     11. Plaintiff Craig Anderson is a resident of Palmdale, California and a

24 citizen of the State of California. Ms. Anderson owned a dog named Harry who

25 became ill upon ingesting tainted pet food manufactured and distributed by

26 Defendants, including, without limitation, Ol'Roy dog food. Ms.Anderson fed

27 her dog Ol' Roy pouches dog food which was purchased at Walmart. In or about

28

1  mid March 2007, Harry became ill and was taken to the veterinarian on several

2  occasions. However, Harry became sicker and eventually died on or about March

3  25, 2007. Ms. Anderson is informed and believes and thereon alleges that his

4  dog's illness and eventual death was directly caused by the ingestion of Ol'Roy

5  pouches dog food, and/or one of the numerous tainted pet food products

6  manufactured by Defendant MENU FOODS. As a result, Ms. Anderson has

7  sustained compensatory damages, including, without limitation, veterinary bills

8  and related expenses. Ms. Anderson brings this action on behalf of herself and all

9  others similarly situated.

10

11  **DEFENDANTS**

12      12.    Plaintiffs are informed and believe and thereon allege that

13  Defendants MENU FOODS INCOME FUND, MENU FOODS, INC., MENU

14  FOODS LIMITED, MENU FOODS OPERATING LIMITED PARTNERSHIP,

15  MENU FOODS MIDWEST CORP. (the Menu Foods entities are collectively

16  referred to as "MENU FOODS"), CHEM NUTRA, INC., PETCO ANIMAL

17  SUPPLIES, INC. (hereinafter "PETCO"), NUTRO PRODUCTS, INC. and Does 1

18  through 10, are corporations or other business entities doing business in the State

19  of California and throughout the United States. Plaintiffs are further informed and

20  believe and thereon allege that all named Defendants either manufactured, sold,

21  re-sold, inspected, marketed, distributed and/or placed into the stream of

22  commerce numerous brands of pet food and/or pet food ingredients such as wheat

23  gluten, (hereinafter referred to as the "Pet Food" or "PRODUCT") that was

24  ingested by pet animals belonging to Plaintiffs and others similarly situated, and

25  caused these pets to become ill and/or die. The tainted Pet Food included, without

26  limitation, popular brands such as Nutro Natural Choice, Iams, Eukanuba, Nutro

27  Ultra, Special Kitty, Loving Meals, Winn Dixie, Science Diet, Ol' Roy Pouches

28

1  and numerous other brands, some of which have since been recalled.  As a result
2  of Defendants' conduct, Plaintiffs, and all others similarly situated, sustained
3  damages.

4

5       13. Plaintiffs are further informed and believe and thereon allege that
6  defendant CHEM NUTRA is a corporation duly registered under the laws of the
7  State of Nevada.   Plaintiffs are further informed and believe and thereon allege
8  that defendant CHEM NUTRA supplied tainted or contaminated wheat gluten to
9  various pet food manufacturers and/or distributors, yet failed to inform the general
10 public about the tainted ingredients, despite the fact that CHEM NUTRA knew or
11 should have known that the wheat gluten it had supplied was poisonous and was
12 likely to cause death or serious illness when ingested by animals.  As a result of
13 the acts and omissions of CHEM NUTRA,  pets belonging to Plaintiffs and others
14 similarly situated became sick and/or died.

15

16      14. Plaintiffs are further informed and believe and thereon allege that
17 defendant PETCO is a citizen of California in that its principal place of business
18 and corporate headquarters are located in the State of California. Defendant
19 PETCO sold and marketed various tainted pet foods, including, without limitation,
20 Nutro Natural Choice .

21

22      15.  Plaintiffs are informed and believe and thereon allege that Defendant
23 Nutro Products Inc., which distributes Nutro Natural Choice and other pet foods,
24 is a corporation duly registered under the laws of the State of California.

25

26      16. Plaintiffs are  informed and believe and thereon allege that Defendants
27 MENU FOODS INCOME FUND, MENU FOODS, INC., MENU FOODS

28

1  LIMITED, MENU FOODS OPERATING LIMITED PARTNERSHIP, MENU
2  FOODS MIDWEST CORP. are related and affiliated companies which
3  manufacture, distribute, market and sell various products intended to be used as
4  food for dogs and cats, including   Iams, Eukanuba, Nutro Natural Choice, Nutro
5  Ultra, Special Kitty, Loving Meals, Winn Dixie, Science Diet, Ol' Roy and other
6  labels that were marketed to consumers as healthy and nutritious food for their
7  pets, yet in fact contained poisonous compounds.

8

9      17.  The true names and capacities, whether corporate, associate,
10  individual or otherwise of defendants DOES 1 through 10, inclusive, are unknown
11  to plaintiffs, who therefore sues said defendants by such fictitious names.  Each of
12  the defendants designated herein as a DOE is negligently or otherwise legally
13  responsible in some manner for the events and happenings herein referred to and
14  caused injuries and damages proximately thereby to the plaintiffs, as herein
15  alleged.  Plaintiffs will ask leave of Court to amend this Complaint to show their
16  names and capacities when the same have been ascertained.

17

18      18.  At all times herein mentioned, defendants, and each of them, were the
19  agents, representatives, employees, successors and/or assigns, each of the other
20  and at all times pertinent hereto were acting within the course and scope of their
21  authority as such agents, representatives, employees, successors and/or assigns.

22

23              **CLASS ACTION ALLEGATIONS**
24      19. Plaintiffs bring this action on behalf of themselves and all others
25  similarly situated as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the
26  Federal Rules of Civil Procedure.   The class that Plaintiffs seek to represent
27  (herein referred to as "PLAINTIFF CLASS")  is composed of and defined as
28

follows:

> **All pet owners residing in the United States who
> purchased the tainted Pet Food and/or whose dogs or cats
> became sick and/or died as a result of ingesting the tainted Pet
> Food.**

20. The members of the class are so numerous that joinder of all members would be unfeasible and not practicable. The membership of the entire class is unknown to Plaintiffs at this time; however, it is estimated that the entire class is greater than 1,000 individuals, but the identity of such membership is readily ascertainable via inspection of records and other documents maintained by Defendants.

21. There are common questions of law and fact as to the class which predominate over questions affecting only individual members including, without limitation:

A.    Did Defendants either manufacture, sell, inspect, market, distribute and/or place the Pet Food into the stream of commerce?

B.    Was the Pet Food a defective product?

C.    Did the Defendants knowingly or negligently make false statements about the safety of the Pet Food?

D.    Did Plaintiffs and others similarly situated rely upon Defendants' false representations regarding the safety of the Pet Food for consumption by animals?

E.    Did Defendants breach any warranties regarding the safety of the Pet Food?

F.    Did Defendants know, or should they have known, about the risks

posed to pets consuming the Pet Food, and if so, when did they
know of this risk?

G.   Did the Pet Food cause pets belonging to Plaintiffs and others
similarly situated to become ill and/or die?

H.   Did Plaintiffs and others similarly situated suffer compensatory
damages as a result of Defendants' conduct?

I.   Whether Defendants engaged in unfair business practices, false
advertising or other deceptive practices in violation of California
Business & Professions Code Sections 17200 et seq and 17500 et
seq and/or Civil Code Section 1770 et seq.

J.   Whether Defendants acted with, malice, oppression, fraud and/or
with  gross negligence in disregard of humanity, thereby
justifying the award of punitive and exemplary damages.

K..   The effect upon and the extent of damages suffered by the
PLAINTIFF CLASS and the appropriate amount of compensation.

L..   Whether injunctive relief against Defendants is appropriate and if
so the nature and extent of such relief.

22. The claims of Plaintiffs pled as class action claims are typical of the
claims of all members of the class as they arise out of the same course of conduct
and are predicated on the same violation(s) of the law.  Plaintiffs, as representative
parties, will fairly and adequately protect the interests of the class by vigorously
pursuing this suit through their attorneys who are skilled and experienced in
handling matters of this type.

23. The nature of this action and the nature of the laws available to the
PLAINTIFF CLASS make use of the class action format a particularly efficient

1  and appropriate procedure to afford relief to the PLAINTIFF CLASS.  Further,
2  this case involves corporate defendants and a large number of individuals
3  possessing claims with common issues of law and fact.  If each individual were
4  required to file an individual lawsuit, the corporate defendants would necessarily
5  gain an unconscionable advantage since they would be able to exploit and
6  overwhelm the limited resources of each individual plaintiff with their vastly
7  superior financial and legal resources.  Proof of common business practices or
8  factual patterns, of which the named plaintiffs experienced, is representative of the
9  class mentioned herein and will establish the right of each of the members of the
10 class to recovery on the claims alleged herein.

11

12      24. The prosecution of separate actions by the individual class members,
13 even if possible, would create: (a) a substantial risk of inconvenient or varying
14 verdicts or adjudications with respect to the individual class members against the
15 defendants herein; and/or (b) legal determinations with respect to individual class
16 members which would, as a practical matter, be dispositive of the other class
17 members not parties to the adjudications or which would substantially impair or
18 impede the ability of class members to protect their interests.  Further, the claims
19 of the individual members of the class are not sufficiently large to warrant
20 vigorous individual prosecution considering all of the concomitant costs and
21 expenses attending thereto.  Plaintiffs are also unaware of any difficulties that are
22 likely to be encountered in the management of this action that would preclude its
23 maintenance as a class action.

24

25          **FACTS COMMON TO ALL COUNTS**

26      25. Plaintiffs  are informed and believe and thereon allege that Defendants
27 manufactured, sold, re-sold, inspected, marketed, distributed and/or placed into the
28 stream of commerce various brands of the Pet Food.  The Pet Food was marketed

1   and advertised by Defendants throughout California and the United States as being

2   safe and healthy for pets to consume.  Moreover, the Pet Food was sold in pet

3   stores throughout California and the United States, including stores owned and

4   operated by Defendant PETCO.

6       26.  Plaintiffs are informed and believe and thereon allege that consumers

7   throughout California and the United States purchased the Pet Food, which was

8   fed to their cats and dogs.  Plaintiffs are further informed and believe and thereon

9   allege that as a result of ingesting the Pet Food, thousands of pets became

10  seriously ill and required extensive medical care.   Plaintiffs are further informed

11  and believe and thereon allege that numerous pet animals have died as a direct

12  result of ingesting the Pet Food.

14      27. On or about February 20, 2007, and possibly earlier, MENU FOODS

15  learned that its Pet Food was causing dogs and cats to become sick and/or die.

16  MENU FOODS had received numerous reports from around the country that the

17  Pet Food was causing illness and death.  In addition, several dogs and cats died in

18  the course of its internal "taste testing" of the Pet Food.

20      28.  Despite the fact that it knew or should have known that the Pet Food

21  was defective and causing death and illness to household cats and dogs as early as

22  February 20, 2007, MENU FOODS delayed reporting any problem to the United

23  States Food and Drug Administration ("FDA") – the governmental agency imbued

24  with overseeing the pet food industry – until more than three weeks later, on

25  March 15, 2007.  As a result of MENU FOODs' delay in reporting the problem to

26  the FDA, more dogs and cats throughout the country became sick and/or died.

28      29. Beginning on March 16, 2007 – – long after it knew or should have

1　known that the Pet Food was defective and presented a serious risk to the health
2　and safety of pets – MENU FOODS commenced to issue a series of piecemeal,
3　incomplete and misleading press releases and public assurances. Over the course
4　of the ensuing month, and perhaps longer, it issued supplemental recalls, provided
5　false assurances regarding the parameters of the recall, and expanded its list of
6　recalled products on no fewer than four occasions.

7

8　　　30. On or about March 16, 2007, MENU FOODS issued what it deemed a
9　"Precautionary" recall of dog and cat food. The recall was limited to specified
10　brands of "'cuts and gravy'" style pet food in cans and pouches" that had been
11　manufactured between December 3, 2006 and March 6, 2007. MENU FOODS
12　represented that it was "taking this proactive step out of an abundance of caution,"
13　creating a false assurance that they were erring on the side of being overly
14　inclusive in its recall.

15

16　　　31. Between March 16 and April 5, 2007, while household pets continued
17　to get sick and/or die as a result of ingesting the tainted Pet Food, MENU FOODS
18　continued to assure pet owners and the public at large that the "precautionary"
19　recall was limited to "cuts and gravy style" wet food and only to the specific
20　brands and dates of manufacture specified in its recall notice of March 16, 2007.
21　On March 26, 2007, in light of conflicting public reports, MENU FOODS assured
22　the public that it had not expanded its recall and that there was "no evidence" of
23　contamination of products not identified on the recall list. On March 30, 2007,
24　MENU FOODS assured the public that its non-recalled food was safe and healthy
25　for consumption by North America's pets. Paul K. Henderson, MENU FOODS'
26　President and CEO, announced that "Our products are safe."

27

28　　　32. As it turned out, MENU FOODS' assurances were false and

misleading, and the parameters specified in its March 16th recall grossly inaccurate
and insufficient to protect pet owners and their pets.

33.  On or about April 3, 2007, defendant CHEM NUTRA publicly
identified itself as the supplier of wheat gluten to three unidentified pet food
manufacturers and one unidentified distributor.  CHEM NUTRA announced that
melamine had been found in its wheat gluten and announced that it was recalling
specified batch numbers of wheat gluten that it had shipped between November 9,
2006 and March 8, 2007.

34. On or about April 5, 2007, MENU FOODS, contrary to its earlier
assurances, added that it was recalling an additional 20 varieties of dog and cat
food and that it was expanding the temporal parameters of it recall to include
products manufactured between November 8, 2006 through March 6, 2007.

35. On or about April 10, 2007, MENU FOODS, contrary to its earlier
assurances, announced that it was recalling an additional 28 varieties of dog and
cat food in the United States.

36. On or about April 17, 2007 – more than a month after its initial recall
– MENU FOODS expanded (or in its own words, "refined") the recall list to
include one additional item and two additional production dates.

37. Plaintiffs are informed and believe and thereon allege that there are
thousands of pets throughout the United States who ingested the Pet Food and, as
a result, became ill and/or died and required their owners to incur substantial
veterinarian  and other related expenses. MENU FOODS substantially
compounded the incidence of pet deaths and illness by providing false and

1    misleading assurances regarding the safety of its products, by delaying its

2    notification to the FDA, and by issuing inaccurate, confusing and piecemeal press

3    releases that failed to disclose the full extent of the contamination of the Pet Food.

4

5        38.  Plaintiffs are informed and believe and thereon allege that the Pet

6    Food was defective due to a defect in design, manufacturing, reconditioning,

7    inspection and/or warning.  In particular, Plaintiffs are informed and believe and

8    thereon allege that the Pet Food was contaminated with dangerous substances,

9    including, without limitation, aminopterin (a form of rat poison) and/or melamine

10   (a component used in the manufacture of plastic and fertilizer) and which causes

11   death and/or serious illness when ingested by dogs or cats.

12

13       39.  Plaintiffs are informed and believe and thereon allege that Defendants,

14   and each of them, knew or should have known  that the Pet Food was defective

15   and posed an unreasonable safety risk to the safety of animals who would consume

16   it.  Plaintiffs are further informed and believe and thereon allege that Defendants

17   concealed from members of the consuming public, including Plaintiffs and others

18   similarly situated, the nature and scope of the product defect.

19

20       40. Plaintiffs are  informed and believe and thereon allege that in

21   furtherance of their  active concealment and suppression of information

22   concerning the product defect, defendants caused to be published deceptive and

23   misleading advertising that emphasized that their products were safe, healthy and

24   free from known safety defects, when in fact they were not.  Plaintiffs are  informed

25   and believe and thereon allege  that Defendants intended such false and deceptive

26   advertising to lull the consuming public into a false sense of security by inducing

27   reliance on Defendants' claims of high quality and safety.

28

41.  Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants' knowledge and understanding of the product defect and its resulting danger to animals was substantially greater than that of Plaintiffs and others similarly situated, who were unaware of the nature or cause of the product defect, and had no access to Defendants' research and testing results, product  statistics, or other internal information in that regard.

42.  Plaintiffs are informed and believe and thereon allege that Defendants were aware of the risk of serious injury caused by the sale of the Pet Food, but that defendants deliberately chose not to fix, recall or correct these problems because of the expense involved, thus placing their own economic interests over those of consumers such as plaintiffs and others similarly situated.

43.  Plaintiffs are informed and believe and thereon allege that Defendants manufactured, sold, re-sold, inspected, marketed, distributed and/or placed into the stream of commerce various brands of the Pet Food.  The Pet Food was marketed and advertised by Defendants throughout the State of California as being safe and healthy for pets to consume.  Moreover, the Pet Food was sold in pet stores throughout California, including stores owned and operated by Defendant PETCO.

44. Plaintiffs are informed and believe and thereon allege that consumers throughout California purchased the Pet Food, which was fed to their cats and dogs.  Plaintiffs are further informed and believe and thereon allege that as a result of ingesting the Pet Food, thousands of pets became seriously ill and required extensive medical care.   Plaintiffs are further informed and believe and thereon allege that numerous pet animals have died as a direct result of ingesting the Pet Food.  On or about March 16, 2007, Defendant MENU FOODS, the principal manufacturer of the tainted Pet Food, issued a recall of the Pet Food (which was

1  manufactured between December 3, 2006 and March 6, 2007).  Plaintiffs are
2  further informed and believe and thereon allege that prior to the recall, Defendant
3  MENU FOODS and other defendants either knew or should have known that the
4  Pet Food was defective and presented a serious risk to the health and safety of
5  animals.

6

7  45. As a result of the acts and omissions of defendants and each of them,
8  thousands of pet owners throughout the United States including Plaintiffs Losis
9  Grady, Kate Steinsaif, Barbara Gonzales, Frank Bodeman and Craig Anderson fed
10 their pets tainted pet food and as a result their pets suffered serious, and sometimes
11 fatal illnesses, including kidney failure . As a result thousands of pet owners,
12 including Plaintiffs, sustained compensatory damages, including, without
13 limitation, veterinary bills and /or burial bills and related expenses.

14

15

16 46. Plaintiffs are informed and believe and thereon allege that the Pet
17 Food  was defective due to a defect in design, manufacturing, reconditioning,
18 inspection and/or warning.  In particular, Plaintiffs are informed and believe and
19 thereon allege that the Pet Food was contaminated with dangerous substances,
20 including aminopterin (a form of rat poison) and/or melamine (a component used
21 in the manufacture of plastic and fertilizer)  which causes death and/or serious
22 illness when ingested by dogs or cats.

23

24 47. Plaintiffs are informed and believe and thereon allege that Defendants,
25 and each of them, knew or should have known  that the Pet Food was defective
26 and posed an unreasonable safety risk to the safety of animals who would consume
27 it.  Plaintiffs are further informed and believe and thereon allege that Defendants
28 concealed from members of the consuming public, including Plaintiffs and others

1    similarly situated, the nature and scope of the product defect.

2

3       48. Plaintiffs are informed and believe and thereon allege that in

4    furtherance of their active concealment and suppression of information

5    concerning the product defect, defendants caused to be published deceptive and

6    misleading advertising that emphasized that their products were safe, healthy and

7    free from known safety defects, when in fact they were not. Plaintiffs are informed

8    and believe and thereon allege that Defendants intended such false and deceptive

9    advertising to lull the consuming public into a false sense of security by inducing

10   reliance on Defendants' claims of high quality and safety.

11

12                        **FIRST CAUSE OF ACTION**

13                      **STRICT PRODUCTS LIABILITY**

14                        **(Against All Defendants)**

15

16      49. Plaintiffs hereby incorporate by reference the allegations in paragraphs

17   1 through 48, inclusive as though set forth herein in their entirety.

18

19      50. Plaintiffs are informed and believe and thereon allege that at all times

20   herein mentioned, said defendants, and each of them, and their successors,

21   designed, manufactured, built, assembled, adjusted, repaired, inspected, re-sold

22   and/or introduced into interstate and/or intrastate commerce for sale therein, sold,

23   distributed, supplied, maintained, controlled, cared for, supervised, attended to,

24   inspected, engaged in testing, labeling, transporting, storing, advertising,

25   marketing, selling and recommending the Pet Food to the general public and

26   other ultimate users (including Plaintiffs and others similarly situated) throughout

27   the United States, including the State of California. Defendants represented to the

28   general public, including Plaintiffs and others similarly situated, that the Pet Food

1  was safe and healthy for animals to eat.

2

3    51. Plaintiffs are informed and believe and thereon allege that the Pet Food

4  was defective, unsafe, hazardous, perilous, insecure, unfit, and dangerous for its

5  intended use, and the purposes for which it was intended, by reason of defect(s) in

6  its design, assembly, adjustment, manufacture, construction, maintenance,

7  installation, operation, control, care, supervision, attention to, servicing, upkeep,

8  repair, inspection, testing, processing, producing, packaging, labeling, storing,

9  advertising, warning, recommendations and sale, in that the Pet Food was

10  contaminated and therefore failed to meet the reasonable expectations of the

11  ordinary consumer when the Pet Food was used for its intended purposes, and/or

12  its reasonably foreseeable uses, as heretofore mentioned.

13

14    52.  Plaintiffs are  informed and believe and thereon allege that at all

15  relevant times, Plaintiffs, and others similarly situated were using the Pet Food in

16  a manner consistent with its intended purpose, and/or its foreseeable use and in the

17  manner recommended by Defendants, and each of them, as heretofore mentioned.

18  As a direct and proximate result of the defects as aforesaid, the Pet Food failed to

19  perform as safely as the ordinary consumer would expect which caused illness to

20  Plaintiffs' pets, thereby directly and proximately causing the resulting damages to

21  Plaintiffs and others similarly situated.

22

23    53.  Plaintiffs are informed and believe and thereon allege that as a direct

24  and proximate result of the acts and omissions of Defendants, and each of them, as

25  herein alleged, Plaintiff s suffered the damages alleged herein in an amount within

26  the jurisdiction of this Court.

27

28    54.  Plaintiffs are informed and believe and thereon allege that the

1   aforementioned acts and omissions of Defendants Menu Foods and Chem-Nutra
2   were  willful, malicious, intentional, oppressive, fraudulent and despicable and
3   were done in willful and conscious disregard of the rights, welfare and safety of
4   Plaintiffs and others similarly situated and/or with gross negligence in disregard of
5   humanity, thereby justifying the awarding of punitive and exemplary damages in
6   an amount to be determined at time of trial.  Plaintiffs are informed and believe
7   and on that basis alleges that officers, directors and/or managing agents of Menu
8   Foods acted in conscious disregard of Plaintiffs' rights and the safety of Plaintiffs'
9   pets  by designing, distributing, or selling the Pet Food, despite the known defects
10  in the Pet Food, which the officers, directors and/or managing agents of
11  Defendants knew would injure persons such as Plaintiffs.  To the extent that any
12  officer, director and/or managing agent of each of the Defendants did not
13  personally commit the malicious, oppressive or fraudulent acts described above,
14  each such defendant authorized or ratified the malicious, oppressive and/or
15  fraudulent act.

16

17              **SECOND CAUSE OF ACTION**
18                    **NEGLIGENCE**
19               **(Against All Defendants)**

20

21      55.  Plaintiffs hereby incorporate by reference the allegations in paragraphs
22  1 through 54, inclusive as though set forth herein in their entirety.

23

24      55.  Defendants, and each of them owed a duty of care towards Plaintiffs
25  and  others similarly situated and the general public in which they were required to
26  use reasonable diligence and due care in the manufacturing, design,  marketing,
27  distribution, inspection, storage and/or sale of The Pet Food.  Plaintiffs are
28  informed and believe and thereon allege that Defendants, and each of them,

1   breached their duty of care by causing contaminated Pet Food to enter stream of
2   commerce where it was consumed by thousands of pet animals, many of whom
3   became seriously ill and/or died and by concealing from and misrepresenting to
4   the general public the defective condition of The Pet Food.
5
6   56. As a direct and legal result of the negligent acts and omissions of
7   Defendants, and each of them, plaintiffs and others similarly situated have
8   suffered damages, including, without limitation, veterinarian bills and related
9   expenses.
10
11  57. Plaintiffs are informed and believe and thereon allege that at all
12  relevant times, Defendants, and each of them, and their successors, so negligently,
13  carelessly, recklessly and unlawfully designed, manufactured, built, sold,
14  distributed, supplied, assembled, adjusted, constructed, installed, maintained,
15  operated, controlled, cared for, created warnings for, supervised, attended to,
16  serviced, repaired, inspected, tested, introduced into interstate and/or intrastate
17  commerce for sale therein, advertised, recommended and stored the Pet Food,
18  thereby direct and proximately causing the resulting damages to Plaintiffs and
19  others similarly situated as alleged herein.
20
21  58. Plaintiffs are informed and believe and thereon allege that as a direct
22  and proximate result of the negligent acts and omissions of Defendants, and each
23  of them,, Plaintiffs and others similarly situated suffered the damages alleged
24  herein in an amount within the jurisdiction of this Court.
25
26
27
28

# **THIRD CAUSE OF ACTION**

## **BREACH OF WARRANTIES**

### **(Against All Defendants)**

59. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 58, inclusive as though set forth herein in their entirety.

60. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, and prior thereto, Defendants, and each of them, and their successors, designed, manufactured, assembled, adjusted, introduced into interstate and/or intrastate commerce for sale therein, sold, distributed, supplied, constructed, maintained, controlled, cared for, supervised, attended to, serviced, inspected, engaged in testing, processing, producing, packaging, labeling, transporting, into interstate and/or intrastate commerce for sale therein, storing, advertising, selling and recommending the Pet Food to the general public and other ultimate users and for use with all knowledge and intent that it be used by the general public and other ultimate users, and said defendants, and each of them, including all fictitiously named defendants herein, and their successors impliedly represented that the Pet Food was fit for the purpose and uses for which it was intended.

61. Plaintiffs and others similarly situated relied upon said representations and warranties and had no knowledge of the dangerous, unsafe, hazardous, and unfit quality of The Pet Food.

62. Plaintiffs are informed and believe and thereon allege that the Pet Food was and is unsafe, hazardous, perilous, insecure, dangerous and unfit when used for the purposes for which it was intended and in the manner recommended

1    by Defendants, and each of them, and their successors, which resulted in damages

2    and injuries to Plaintiffs and others similarly situated, as alleged herein.

3

4

5    **FOURTH CAUSE OF ACTION**

6    **UNFAIR COMPETITION AND BUSINESS PRACTICES**

7    **(CALIFORNIA BUSINESS AND PROFESSIONS CODE**

8    **SECTION 17200, ET SEQ.)**

9    **(Against All Defendants)**

10

11    63.    Plaintiffs hereby incorporate by reference the allegations in paragraphs

12    1 through 62, inclusive, as though set forth herein in their entirety.

13

14    64. Defendants' unlawful and unfair  practices as alleged herein violate

15    California law and constitute ongoing and continuous unfair business practices

16    within the meaning of Business and Professions Code  §17200.  Such practices

17    include, but are not limited to, Defendants making false representations as to the

18    safety of the Pet Food and Defendants' concealment from members of the public

19    the danger that the Pet Food posed to dogs and cats while continuing to

20    manufacture, market, sell and distribute The Pet Food.

21

22    65.  California Business and Professions Code §17200 prohibits unfair

23    competition and unfair business practices, including, "any unlawful, unfair or

24    fraudulent business act or practice . . . ." Defendants' conduct as specified herein,

25    constitutes a violation of California Business and Professions Code §17200, et

26    seq.

27

28    66. As a result of Defendants' unfair business practices, Defendants have

1  reaped unfair benefits and illegal profits at the expense of Plaintiffs, the

2  PLAINTIFF CLASS and members of the public.  Defendants should be made to

3  disgorge their ill-gotten gains and restore such monies to Plaintiffs and the

4  PLAINTIFF CLASS.

5

6       67. Defendants' unfair business practices entitle Plaintiffs and the

7  PLAINTIFF CLASS to seek preliminary and permanent injunctive relief,

8  including but not limited to, orders that the Defendants account for, disgorge and

9  restore to Plaintiffs and the PLAINTIFF CLASS the compensation unlawfully

10 withheld from them.  Accordingly,  Plaintiffs seek disgorgement of all profits

11 resulting from these unlawful, unfair, and fraudulent business practices,

12 restitution, and other appropriate relief as provided for by Business & Professions

13 Code §17203.

14

15                    **FIFTH  CAUSE OF ACTION**

16                        **FALSE ADVERTISING**

17          **(CALIFORNIA BUSINESS AND PROFESSIONS CODE**

18                    **SECTION 17500, ET SEQ.)**

19                        **(Against All Defendants)**

20

21       68.     Plaintiffs hereby incorporate by reference the allegations in

22 paragraphs 1 through 67, inclusive as though set forth herein in their entirety.

23

24       69.     California Business and Professions Code §17500 prohibits

25 various deceptive practices in connection with the dissemination in any manner of

26 representations for the purpose of inducing, or which are likely to induce, directly

27 or indirectly, customers to purchase consumer products such as the tainted pet

28 food described herein.

70. Defendants' acts, practices, misprepresentations, and omissions as alleged herein were intended to, and did, induce the consuming public, including Plaintiffs, to purchase the tainted pet food, and violated and continue to violate California Business & Professions Code Section 17500, in that the products did not conform to Defendants' representations

71. As a result of the foregoing, Plaintiffs are entitled to injunctive and equitable relief, including restitution, and an order requiring disgorgement of Defendants' ill gotten gains.

## SIXTH  CAUSE OF ACTION
### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CIVIL CODE § 1750 ET. SEQ.)
### (AGAINST ALL DEFENDANTS)

72. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 71, inclusive as though set forth herein in their entirety.

73. This claim arises under the Consumer Legal Remedies Act ("CLRA"), Civ. Code §1750 et seq., and is alleged against all defendants. The CLRA was designed to protect consumers from unfair and deceptive business practices.

74. At all times relevant hereto, Plaintiffs, including Plaintiff Class Members, were "consumers," as that term is defined in Civ. Code §1761(d). Moreover, at all times relevant hereto, Defendants  provided "goods," as that term is defined in Civ. Code §1761(a).

75. The CLRA provides in relevant part that certain unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful. Plaintiffs are informed and believe and thereon allege that the Defendants violated the CLRA, including, without limitation, the following provisions of California Code of Civil Procedure Section 1770(a):

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

76. In engaging in unfair and deceptive conduct in violation of the CLRA, Defendants actively concealed and intentionally failed to disclose material facts about the characteristics of the pet food, and further represented to Plaintiffs and the general public that such pet food was safe and suitable for pet consumption.

77. As a result of Defendants' unfair and deceptive business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiffs, the PLAINTIFF CLASS and members of the public. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiffs and

1  the PLAINTIFF CLASS.

2

3        78. Pursuant to Civil Code Sections 1780 and 1781,  Plaintiffs and

4  PLAINTIFF CLASS request certification of Plaintiff Class, restitution, injunctive

5  relief and an award of reasonable attorney's fees and costs pursuant to Civil Code

6  § 1780.

7

8                              **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

10  them, as follows:

11        1.      That causes of action one through six  may be maintained as a class

12                action;

13        2.      For compensatory damages in an amount within the jurisdictional

14  limits of this court according to proof as to the First, Second and Third Causes of

15  Action, including medical, burial and related expenses ,  according to proof;

16        3.      For punitive damages, according to proof pursuant to Civil Code

17  Sections 3294 and/or 3340 against Defendants Menu Foods and Chem-Nutra;

18        4.      For injunctive and equitable relief as to the  Fourth, Fifth and Sixth

19  Causes of Action, including an accounting of profits and restitution based on

20  Defendants' unjust enrichment and unfair and deceptive practices, according to

21  proof

22        5.      For cost of suit;

23        6.      For attorneys fees pursuant to Code of Civil Procedure Section

24  1021.5, California Civil Code Section 1780 and other applicable provisions of

25  law;

26

27

28

7.     For interest at the legal rate; and

8.     For such other and further relief as the Court may deem just and proper.

Dated: April 24, 2007                          HELMER • FRIEDMAN, LLP

                                               SCHONBRUN DeSIMONE SEPLOW
                                               HARRIS & HOFFMAN LLP

                                               _____
                                               Gregory Helmer
                                               Michael D. Seplow
                                               Attorneys for Plaintiffs

1

# **DEMAND FOR JURY TRIAL**

2    Plaintiffs Lois Grady et al. hereby demand a trial by jury on all claims.

3

4

5    Dated: April 24, 2007                    HELMER • FRIEDMAN, LLP

6                                             SCHONBRUN DeSIMONE SEPLOW
                                             HARRIS & HOFFMAN LLP
7

8    _____
                                             Gregory Helmer
9                                             Michael D. Seplow
                                             Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a resident of the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 723 Ocean Front Walk, Venice, CA 90291.

On **April 24, 2007**, I served the foregoing documents described as:

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

on all interested parties in this action by placing ___ originals or __X__ true copies thereof enclosed in separate sealed envelopes addressed to each of the following individuals.

Jean M. Lawler
Gina E. Och
MURCHINSON & CUMMING, LLP
801 South Grand Avenue, 9th Floor
Los Angeles, CA 90017
Telephone: (213) 623-7400
Facsimile: (213) 623-6336

Charles Hughes Abbott III
GIBSON DUNN & CRUTCHER, LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-6887

Barbara L. Croutch
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
725 South Figueroa, Suite 2800
Los Angeles, CA 90017
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

__X__      **[MAIL]** I caused such envelope to be deposited in the mail at Venice, California. The envelope was mailed with postage thereof fully prepaid.

____      **[BY FEDERAL EXPRESS]** I caused such envelopes to be delivered via federal express at Venice, California.

____      **[BY PERSONAL DELIVERY]** I caused the foregoing documents to be personally served on the interested parties.

____      **[BY FAX]** I transmitted the documents to the above by facsimile.

__X__      **[FEDERAL]** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Menaka Fernando

## PROOF OF SERVICE